2022 IL App (2d) 210543
No. 2-21-0543
Opinion filed August 31, 2022

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| DARLENE WESTBERG, as Assignee of Barbara Bergstrom, | ) ) ) | Appeal from the Circuit Court of Lake County. |
| Plaintiff-Appellant, | ) ) | |
| v. | ) ) | No. 19-CH-535 |
| VICTOR N. BARCROFT; SUSAN BARCROFT; DRM PROPERTIES, LLC; SARA SINCLAIR; ZANE ANDERSON; KELLY BURLINGAME; UNKNOWN OWNERS AND TENANTS; and NONRECORD CLAIMANTS, | ) ) ) ) ) ) ) ) | |
| Defendants | ) ) | Honorable Stacey L. Seneczko, |
| (Susan Barcroft, Defendant-Appellee). | ) | Judge, Presiding. |

JUSTICE BRENNAN delivered the judgment of the court, with opinion.
Justices Jorgensen and Schostok concurred in the judgment and opinion.

**OPINION**

¶ 1 Plaintiff, Darlene Westberg (as assignee of Barbara Bergstrom), sued, *inter alios*, defendants, Victor N. Barcroft and Victor's daughter, Susan Barcroft, for foreclosure of a judgment lien against real property Victor and Susan owned in joint tenancy. During the pendency of the lawsuit, Victor passed away. The underlying judgment—the subject of the lien—was solely against Victor. The parties filed cross-motions for summary judgment on the issue of whether

Victor's interest in the property extinguished upon his death. The trial court held that it did and that Darlene could no longer foreclose on the judgment lien against the property. Accordingly, the trial court granted summary judgment in favor of Susan and against Darlene. For the reasons set forth below, we affirm.

¶ 2                                      I. BACKGROUND

¶ 3     The following is derived from the pleadings and exhibits on file.

¶ 4                                      A. Judgment Lien

¶ 5     The location of the real property at issue is 312 East Main Street, Barrington (Barrington property). On July 5, 2000, Victor conveyed the Barrington property by quitclaim deed to himself and Susan as joint tenants. The quitclaim deed was recorded with the Lake County Recorder. A title insurance commitment for the Barrington property (with a July 18, 2019, commitment date) stated that title is vested in Victor and Susan as joint tenants.

¶ 6     Approximately 16 years after the execution of the quitclaim deed, on June 14, 2016, Barbara obtained a judgment of $388,394.92 against Victor in Florida state court on a breach-of-contract claim. Barbara assigned her interest in the judgment to Darlene.

¶ 7     Three years later, on March 15, 2019, Darlene filed with the Lake County Recorder a memorandum of judgment lien against the Barrington property. There is no dispute that the memorandum of judgment and its filing created a valid judgment lien against the Barrington property. See 735 ILCS 5/12-101 (West 2018). The following month, on April 22, 2019, Darlene initiated this action by filing a single-count complaint for foreclosure of the judgment lien, against Victor, Susan, DRM Properties, LLC, unknown owners and tenants, and nonrecord claimants. The complaint was amended on September 30, 2020, to add as defendants Sara Sinclair—alleged to be a "friend" of Susan who "placed a mortgage on the Property after the Complaint was filed in this

matter"—and Zane Anderson and Kelly Burlingame—tenants at the Barrington property.[1] Darlene sought a judgment of foreclosure and sale, a personal deficiency judgment against Victor, possession of the Barrington property, and termination of any possession rights.

¶ 8    Approximately a month later, on November 2, 2020, Victor passed away. On June 18, 2021, the trial court dismissed Victor from the lawsuit with prejudice.

¶ 9                    B. Cross-Motions for Summary Judgment

¶ 10    On June 11, 2021, the parties filed cross-motions for summary judgment. Susan moved for summary judgment on the basis that Victor's death precluded foreclosure of the judgment lien. Susan argued that neither she nor Victor ever conveyed their interest in the Barrington property to another individual or entity. Thus, she owned a 100% undivided joint tenancy interest in the Barrington property. Accordingly, as the surviving joint tenant of the Barrington property, she became the sole owner of the property upon Victor's death. Since the Florida judgment was solely against Victor, Susan argued that there was no basis upon which to foreclose on the judgment lien against the Barrington property.

¶ 11    Darlene moved for summary judgment on the basis that the validity of the Florida judgment was undisputed and Susan failed to assert any affirmative defense to excuse Victor's failure to satisfy the judgment. Darlene stated that she was no longer seeking a deficiency judgment and sought only to foreclose on Victor's 50% interest in the Barrington property. Darlene argued that Victor's death did not preclude this relief. Rather, according to Darlene, section 12-157 of the

_____

[1]Subsequently, Anderson and Burlingame were voluntarily dismissed without prejudice and a default order was entered against Sinclair, DRM Properties, unknown owners and tenants, and nonrecord claimants.

Code of Civil Procedure (Code) (735 ILCS 5/12-157 (West 2018)), titled "Death of judgment debtor," allows for foreclosure of the judgment lien. The statute provides that a money judgment may be enforced against the real estate of a deceased judgment debtor, or a sale may be made under such judgment, without reviving the judgment against the debtor's heirs, legatees, or legal representatives. *Id.*

¶ 12    Darlene also argued that section 15-1501(h) of the Illinois Mortgage Foreclosure Law (Foreclosure Law) (*id.* § 15-1501(h)), titled "Special Representatives," provides an additional basis for foreclosure of the judgment lien. Specifically, subsection 15-1501(h)(1) (applicable through section 12-101 of the Code (*id.* § 12-101)—providing that a judgment lien on the judgment debtor's real estate may be foreclosed in the same manner as a mortgage), states that, with respect to property that is the subject of the foreclosure action, the court is not required to appoint a special representative for a deceased mortgagor for the purpose of defending the action if there is a living person that holds a 100% interest in the property by virtue of being the deceased mortgagor's surviving joint tenant or surviving tenant by the entirety, although a deficiency judgment against the deceased mortgagor is prohibited. *Id.* § 15-1501(h)(1).

¶ 13                                C. Trial Court's Ruling

¶ 14    Following briefing and argument, on August 20, 2021, the trial court entered an order, granting Susan's motion for summary judgment and denying Darlene's motion for summary judgment for the reasons stated on the record. In its oral findings, the trial court noted that it had "reviewed the statutes cited and the pertinent case law and [found] that the property automatically did pass to Susan Barcroft upon the death of Victor Barcroft, Susan being a joint tenant with Victor." The trial court reasoned that "[t]he surviving joint tenant succeeds to the share of the deceased joint tenant by virtue of a conveyance, which created the joint tenancy[,] not as a

successor of the deceased." Citing the supreme court's decision in *Harms v. Sprague*, 105 Ill. 2d 215, 224-25 (1984), the trial court held that Victor's property rights in the joint tenancy extinguished when he died. Thus, Victor "no longer had a property interest upon which the lien could attach."

¶ 15    The trial court found section 12-157 of the Code inapplicable because the Barrington property "transferred by way of the conveyance and not by some other means such as through [Victor's] estate." Section 12-157 references notice to the "heirs, legatees or legal representatives." 735 ILCS 5/12-157 (West 2018). While Susan happens to also be Victor's heir, "she could very well have been not related to her [*sic*] in which case, according to [Darlene's] contention, you'd be able to foreclose without any, I guess, notice to her outside of the litigation itself."

¶ 16    The trial court also rejected the applicability of section 15-1501(h)(1) of the Foreclosure Law. Citing the appellate court's decision in *Deutsche Bank National Trust Co. v. Estate of Schoenberg*, 2018 IL App (1st) 160871, ¶ 21, the trial court reasoned that section 15-1501(h) of the Foreclosure Law "does not modify the mortgagee's rights with respect to the foreclosure action. It does not create, define or regulate any rights of the parties to the action." Rather, section 15-1501(h) merely addresses "the procedural aspect of who is a necessary party." The trial court distinguished *JP Morgan Mortgage Acquisition Corp. v. Bell*, 2020 IL App (3d) 190128, ¶¶ 37-38, in which the appellate court rejected the surviving tenant by the entirety's argument that the deceased tenant by the entirety was a necessary party to the mortgage foreclosure action and held that the action could proceed solely against the surviving tenant by the entirety. The trial court reasoned that, in *Bell*, "both tenants by the entirety executed the mortgage even though the [deceased tenant by the entirety] was the only one who signed the note." Therefore, the deceased

tenant by the entirety was not a necessary party under section 15-1501(h). The trial court stated that the *Bell* decision did not "hold beyond that as [Darlene] argues."

¶ 17    Accordingly, the trial court entered judgment in favor of Susan and against Darlene. In its written order, the trial court further provided that "[a]ll defaults, technical or otherwise, entered against Defendants DRM Properties, LLC, Sara Sinclair, all tenants, unknown owners, and non-record claimants are hereby vacated, and all claims against them are dismissed as moot" and that "[t]his Order disposes of all claims and all Parties, thereby closing the matter."

¶ 18    Darlene timely appealed.

¶ 19                                    II. ANALYSIS

¶ 20    On appeal, Darlene argues that the trial court misconstrued both section 12-157 of the Code and section 15-1501(h)(1) of the Foreclosure Law. Susan responds that the trial court did not misinterpret the statutes; rather, the statutes are not applicable in the first instance. We agree with Susan and hold that the trial court properly granted summary judgment in her favor.

¶ 21    Summary judgment is proper when "the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." 735 ILCS 5/2-1005(c) (West 2018). "The purpose of summary judgment is not to try a question of fact, but rather to determine whether a genuine question of material fact exists." *Bagent v. Blessing Care Corp.*, 224 Ill. 2d 154, 162 (2007). In determining whether there is a genuine issue of material fact, the pleadings, depositions, admissions, and affidavits must be construed strictly against the movant and liberally in favor of the opponent. *Id.* A triable issue of fact exists where there is a dispute as to a material fact or where, although the material facts are not in dispute, reasonable minds might differ in drawing inferences from those facts. *Id.* at 162-63. Although summary judgment can aid in the

expeditious disposition of a lawsuit, it is a drastic measure and, thus, should be allowed only where the movant's right to judgment is "clear and free from doubt." *Williams v. Manchester*, 228 Ill. 2d 404, 417 (2008). We review summary judgment rulings *de novo. Id.*

¶ 22    Darlene essentially argues that the trial court improperly read a joint-tenancy-interest exception into section 12-157 and a joint-indebtedness requirement into section 15-1501(h)(1). Susan responds that section 12-157 applies to a judgment against the debtor's estate and heirs, not to a surviving joint tenant. Susan also responds that section 15-1501(h)(1) provides no basis for foreclosure of the judgment lien against the Barrington property, because she was neither a mortgagor nor a person who owes payment of indebtedness secured by a mortgage. Moreover, the Barrington property had passed to her unencumbered by the judgment lien against Victor.

¶ 23    Resolving the parties' arguments requires a review of joint tenancy law and interpretation of section 12-157 of the Code and section 15-1501(h)(1) of the Foreclosure Law. The fundamental objective of statutory construction is to ascertain and give effect to the legislature's intent. *Rosenbach v. Six Flags Entertainment Corp.*, 2019 IL 123186, ¶ 24. The most reliable indicator of legislative intent is the statutory language, given its plain and ordinary meaning. *Id.* Each word, clause, and sentence of a statute must be given a reasonable construction, and no term should be rendered superfluous. *1010 Lake Shore Ass'n v. Deutsche Bank National Trust Co.*, 2015 IL 118372, ¶ 21. A court may not depart from the plain and unambiguous language by reading into the statute exceptions, limitations, or conditions not expressed therein. *Rosenbach*, 2019 IL 123186, ¶ 24. We review *de novo* questions of statutory interpretation. *Id.* ¶ 18. With these concepts in mind, we consider whether the trial court properly held that Victor's interest in the Barrington property extinguished upon his death such that Darlene's judgment lien could no longer attach to the Barrington property.

¶ 24                                    A. Joint Tenancy

¶ 25    A joint tenancy is a "present estate in all the joint tenants, each being seized of the whole." (Internal quotation marks omitted.) *Harms*, 105 Ill. 2d at 224. An inherent feature of a joint tenancy is the right of survivorship, which entitles the last surviving joint tenant to take the entire estate. *Id.* "In other words, title vests automatically upon the death of the deceased joint tenant." *In re Estate of Martinek*, 140 Ill. App. 3d 621, 628-29 (1986); see also 765 ILCS 1005/1 (West 2018) (provision of Joint Tenancy Act defining joint tenancy). The creation and perpetuation of the joint tenancy are dependent upon four unities: interest, title, time, and possession. *Harms*, 105 Ill. 2d at 220. The voluntary or involuntary destruction of any of the unities by one of the joint tenants severs the joint tenancy. *Id.* at 220-21. The severance of the joint tenancy, in turn, terminates the right of survivorship. *Maniez v. Citibank, F.S.B.*, 404 Ill. App. 3d 941, 953 (2010) (citing *Jackson v. O'Connell*, 23 Ill. 2d 52, 55 (1961)).

¶ 26    Here, the existence and validity of the joint tenancy were not disputed. There was no allegation that Victor fraudulently conveyed the Barrington property to Susan. Indeed, Victor conveyed the property by quitclaim deed to himself and Susan as joint tenants, 16 years before the entry of the Florida judgment against Victor. The quitclaim deed was recorded with the Lake County Recorder. The title insurance commitment for the Barrington property reflected that Victor and Susan held title to the property as joint tenants. Neither Victor nor Susan severed the joint tenancy through a conveyance of his or her interest. See *id.* at 954 ("We conclude that Illinois requires a conveyance of the joint tenant's interest in the property to sever a joint tenancy.").

¶ 27    The filing of the memorandum of judgment lien against the Barrington property did not sever the joint tenancy. Our supreme court has long recognized that a "judgment lien does not sever the joint tenancy and that by the taking of the judgment nothing was done to sever this

estate." *Van Antwerp v. Horan*, 390 Ill. 449, 452 (1945) (citing *People's Trust & Savings Bank v. Haas*, 328 Ill. 468, 471 (1927)). In *Haas*, the court held that a judgment lien against the deceased joint tenant's interest in the property was extinguished upon his death and that the surviving joint tenant became the sole owner by operation of law. *Haas*, 328 Ill. at 471. The court rejected the creditor's argument that its filing of the transcript of judgment—the procedure required by law at the time to perfect the lien—severed the joint tenancy. *Id.* Accordingly, the court affirmed the entry of a decree that title to the premises vested in the surviving joint tenant, free of the creditor's encumbrance. *Id.*

¶ 28    In *Van Antwerp*, the court extended its holding in *Haas* to a court-ordered levy on property held in joint tenancy. *Van Antwerp*, 390 Ill. at 454-55. Specifically, the court held that

> "it is clear that if the attaching of a judgment lien upon the interest of a joint tenant does not sever the joint tenancy, the making of a levy upon the interest of the joint tenant debtor would not be such act as would sever the joint estate, because of the fact that the levy gives no greater interest than that which the judgment creditor already possessed." *Id.* at 454.

Rather, the levy is "just another step in the process directed toward a final sale," not a divestiture of title. *Id.* at 455. Thus, because the judgment debtor had died, the court affirmed the decree prohibiting the sale of the premises under the court-ordered levy. *Id.* at 451, 455.

¶ 29    In accordance with the rationale advanced in *Van Antwerp*, the supreme court later held that even the sale of the joint tenant's interest in the property did not sever the joint tenancy, because there was no actual conveyance until the redemption period had passed. *Jackson v. Lacey*, 408 Ill. 530, 532-33 (1951). A "sale is but another step forward toward a divestiture of title which can only come about at a future time, if not barred by a redemption." *Id.* at 533 (affirming decree dismissing partition complaint).

¶ 30    Subsequently, in *Harms*, the supreme court likewise held that a mortgage one joint tenant executed on the property neither severed the joint tenancy nor survived as a lien on the property upon the death of the mortgaging joint tenant. *Harms*, 105 Ill. 2d at 224-25. Rather, the surviving joint tenant became the sole owner of the estate in its entirety. *Id.* The court explained that a surviving joint tenant succeeds to the share of the deceased joint tenant by virtue of the conveyance that created the joint tenancy, not as successor of the deceased. *Id.* at 224. While the mortgaging joint tenant was alive, the mortgage existed as a lien on his interest in the joint tenancy. *Id.* However, at the moment of his death, the mortgaging joint tenant's interest in the property "ceased to exist and along with it the lien of the mortgage." *Id.* (citing *Merchants National Bank of Aurora v. Olson*, 27 Ill. App. 3d 432, 434 (1975)).

¶ 31    In *Olson*, the appellate court discussed the import of joint tenancy law in relation to section 219b(a) of the Probate Act (Ill. Rev. Stat. 1971, ch. 3, ¶ 219b(a)) (now section 20-19(a) of the Probate Act of 1975 (755 ILCS 5/20-19(a) (West 2018))). *Olson*, 27 Ill. App. 3d at 433-34. There, the bank obtained a judgment against the husband and filed a memorandum of judgment creating a lien against real estate the husband had owned in joint tenancy for several years with his wife. *Id.* at 433. After the husband died, the bank filed a citation to discover the wife's assets. *Id.* The wife successfully moved to dismiss the action on the basis that, as the surviving joint tenant, she became the sole owner of the property, "free and clear" of the bank's lien. *Id.*

¶ 32    In affirming, the appellate court noted the bank's concession that "the rendition of a judgment against one joint tenant of real estate does not constitute a severance of the joint tenancy" and that the law provided that "if the debtor dies before a sale is had the debtor's share vests in the surviving joint tenant free of the judgment lien." *Id.* (citing *Jackson*, 408 Ill. 530; *Van Antwerp*, 390 Ill. 449; *Haas*, 328 Ill. 468). However, the bank argued that section 219b(a) changed the law.

*Olson*, 27 Ill. App. 3d at 433. Section 219b(a) provided that, " '[e]xcept as otherwise expressly provided by the decedent's will,' " when " 'any real estate *** subject to an encumbrance, *** passes by joint tenancy *** the surviving tenant *** takes it subject to the encumbrance and is not entitled to have the indebtedness paid from other real or personal estate of the decedent.' " *Id.* at 433-34 (quoting Ill. Rev. Stat. 1971, ch. 3, ¶ 219b(a)).

¶ 33    In rejecting the bank's argument, the appellate court reasoned that the requisite for application of the statute was that the real estate in fact be subject to an encumbrance. *Id.* at 434. However, "[t]he real estate involved in the instant case was not subject to an encumbrance from the instant of the death of [the husband] because the property right on which the judgment was a lien was gone at that precise moment." *Id.* In other words, the lien expired because there was no interest to which it could attach. *Id.* The court concluded:

> "When a creditor has a judgment lien against the interest of one joint tenant he can immediately execute and sell the interest of his judgment debtor and thus sever the joint tenancy, or he can keep his lien alive and wait until the joint tenancy is terminated by the death of one of the joint tenants. If the judgment debtor survives, the judgment lien immediately attaches to the entire property. If the judgment debtor is the first to die, the lien is lost." *Id.*

¶ 34    Application of the foregoing principles compels a holding that, upon Victor's death, there was no longer a property interest upon which the judgment lien could attach. At the time of his death, Victor and Susan owned the Barrington property in joint tenancy. Susan was not a judgment debtor; the Florida judgment was solely against Victor. The memorandum of judgment lien against Victor's interest in the property had been filed, and this cause of action for foreclosure of the judgment lien had been initiated. But there had not even been a court-ordered levy on the property

(see *Van Antwerp*, 390 Ill. at 454-55), or a final sale of the property (see *Jackson*, 408 Ill. at 532-33). Accordingly, Victor's property rights in the joint tenancy extinguished upon his death and, thus, so did the lien. See *Harms*, 105 Ill. 2d at 224-25. Susan, as the last surviving joint tenant, automatically became the 100% owner of the Barrington property by operation of law. Victor no longer had an interest in the Barrington property upon which Darlene's judgment lien could attach.

¶ 35    Darlene maintains that, as a judgment creditor, she is nonetheless still entitled to foreclose on Victor's interest in the Barrington property. In support, she cites section 12-157 of the Code and section 15-1501(h)(1) of the Foreclosure Law. We turn to these statutes.

¶ 36                                  B. Section 12-157

¶ 37    Section 12-157 of the Code (735 ILCS 5/12-157 (West 2018))—titled "Death of judgment debtor"—provides in its entirety:

> "If a person dies, after a court enters on judgment for the payment of money against him or her, the judgment may be enforced against the real estate of such deceased person, or a sale may be made under such judgment, without reviving the judgment against his or her heirs, legatees or legal representatives. No sale shall be made until after the expiration of 12 months from the death of such deceased person, nor shall any sale be had on such judgment until the person in whose favor the judgment is sought to be enforced shall give to the executor or administrator, or if there is neither, the heirs of the deceased, at least 3 months' notice of the existence of such judgment, before proceeding to sell, which notice shall be in writing if the parties required to be notified reside or may be found within the State, and their place of residence known, otherwise publication notice shall be given in the same manner as is provided for other civil cases."

¶ 38    According to Darlene, the plain language of the statute allows a judgment creditor to foreclose on the judgment debtor's interest in real property after the judgment debtor's death. However, the statutory language assumes the continued existence of the judgment debtor's interest in the real property. The fundamental flaw in Darlene's argument is that Victor—the judgment debtor—no longer had an interest in the Barrington property at the moment of his death. Precisely, section 12-157 allows for the enforcement of a judgment against "the real estate of such deceased person." *Id.* As discussed, the Barrington property is no longer Victor's property. Susan, as the last surviving joint tenant, automatically became the 100% owner of the Barrington property when Victor died. See *Harms*, 105 Ill. 2d at 224-25. Therefore, section 12-157 provides no basis for the enforcement of Darlene's judgment lien against the Barrington property.

¶ 39    Darlene contends that this holding reads a joint-tenancy-interest exception into section 12-157. We disagree. There is no need for a joint-tenancy-interest exception to section 12-157 because the statute is not applicable here in the first instance. The plain language of section 12-157 reflects its application to property devised through the deceased debtor's estate, not to property conveyed by joint tenancy. Namely, section 12-157 provides that a judgment may be enforced against the real estate of a deceased person "without reviving the judgment against his or her *heirs, legatees or legal representatives*," but it prohibits a sale of the real estate within the first 12 months after the deceased debtor's death and requires the specified notice of the judgment to the *executor, administrator, or heirs* before sale. (Emphasis added.) 735 ILCS 5/12-157 (West 2018). The statute was intended "to protect the heirs and administrators from being sacrificed by sale on execution before opportunity was had to marshal the assets of the estate and meet the existing liens." (Internal quotation marks omitted.) *Woods v. Primm*, 13 F.2d 572, 574 (7th Cir. 1926) (discussing the predecessor deceased debtor statute).

¶ 40 Section 12-157 has no function in this case. There are no interests of either an heir or a legatee (or legal representative) at issue in this case. There is no executor, administrator, or heir to whom notice of the judgment must be provided. Susan became the sole owner of the Barrington property by operation of joint tenancy law, not by being Victor's heir.

¶ 41 The dichotomy between an heir's inheritance and a joint tenant's right of survivorship was discussed in *Martinek*, 140 Ill. App. 3d 621. The real estate purchase contract in *Martinek* stated that the seller, upon satisfaction of the purchasers' obligations under the installment contract, would deliver a deed conveying the property to the purchasers as joint tenants. *Id.* at 624. However, the purchasers, with the sellers' consent, subsequently assigned their rights to George and Shirley Martinek. *Id.* After George died, his devisees filed a probate petition in which they successfully requested a declaration that the Martineks owned the property as tenants in common and that George's interest in the property therefore passed to his estate. *Id.* at 624-25.

¶ 42 In reversing the trial court's order, the appellate court held that the Martineks, as assignees of the real estate purchase contract, "were placed in the shoes of the assignors" and, as a result, held equitable title to the property as joint tenants. *Id.* at 630. Consequently, Shirley, as the surviving joint tenant, was entitled to full interest in the property, free from any claims of George's devisees. *Id.* at 630-31. The court explained that "[a] surviving joint tenant succeeds to the deceased joint tenant's share by dint of the conveyance that created the joint tenancy, not as the successor of the decedent." *Id.* at 629 (citing *Harms*, 105 Ill. 2d at 224). Accordingly,

> "[a] joint tenancy is not an estate of inheritance and, thus, does not become part of the probate estate; therefore, it follows naturally that a joint tenant who dies first has no interest in the property that he or she can convey or devise. Title to property that is held in joint tenancy takes precedence over the claim of the devisee, legatee, or heir." *Id.* (citing Ill.

Rev. Stat. 1983, ch. 76, ¶ 1a (now codified at 765 ILCS 1005/1a (West 2018), pertaining to contracts for purchase of real estate).

¶ 43    Here, at the moment of Victor's death, Susan became the sole owner of the Barrington property by operation of joint tenancy law. The property never became part of Victor's estate. As Victor no longer has any interest in the Barrington property, there is no interest upon which the judgment lien may attach.

¶ 44    Darlene maintains that this court's decision in *In re Marriage of Ross*, 2015 IL App (2d) 130961, ¶ 25, "confirmed that the purpose of the Deceased Debtor Statute was to provide that a judgment survives the death of a judgment debtor and allows a judgment debtor to foreclose on the judgment debtor's real property after the judgment debtor dies, without exception." Initially, we note that we never stated that the deceased debtor statute applies "without exception," as Darlene represents. In any event, Darlene's reliance upon *Ross* is misplaced because the case did not involve a joint tenancy interest. Rather, at issue was the timeliness of the former wife's claim for overdue child support against the deceased husband's estate. *Id.* ¶ 14. In holding that the claim was untimely pursuant to section 510(e) of the Illinois Marriage and Dissolution of Marriage Act (750 ILCS 5/510(e) (West 2012)), we rejected the applicability of, *inter alia*, section 12-157, given the statute's lack of any specific reference to judgments for child support. *Ross*, 2015 IL App (2d) 130961, ¶¶ 25, 31. *Ross* provides no support for Darlene's position that section 12-157 allows for the enforcement of the judgment lien against the Barrington property.

¶ 45    Darlene's reliance upon *Kinkade v. Gibson*, 209 Ill. 246 (1904), and *Woods*, 13 F.2d 572, is likewise misplaced, as neither case involved a joint tenancy interest. Both cases addressed the enforcement of a judgment, pursuant to the predecessor deceased debtor statute, against a deceased debtor's real property inherited by his heirs or devisees—precisely the scenario contemplated by

the language of section 12-157. See *Kinkade*, 209 Ill. at 248, 250-51; *Woods*, 13 F.2d at 573-75. Here, in contrast, there was no inheritance. At the time of his death, Victor's interest in the Barrington property was extinguished. By operation of joint tenancy law, and not as Victor's heir, Susan became the owner of the property in its entirety, free and clear of the judgment lien. Thus, section 12-157 provides Darlene no basis for relief.

¶ 46                                    C. Section 15-1501

¶ 47    This case involves a judgment lien, not a mortgage lien. The record demonstrates that there was no mortgage on the Barrington property (beyond an isolated allegation in the amended complaint regarding Susan's "friend" who placed a mortgage on the Barrington property after this action was filed). Nonetheless, section 12-101 of the Code provides that a judgment lien on certain real estate of the person against whom it is entered "may be foreclosed by an action brought in the name of the judgment creditor *** in the same manner as a mortgage of real property," with certain exceptions not at issue here. 735 ILCS 5/12-101 (West 2018); *Schindler v. Watson*, 2017 IL App (2d) 160126, ¶ 13.

¶ 48    Section 15-1501 of the Foreclosure Law, titled "Parties," delineates, *inter alia*, the necessary and permissible parties to a mortgage foreclosure action. 735 ILCS 5/15-1501 (West 2018). Section 15-1501(h), titled "Special Representatives," provides that,

> "[w]ith respect to the property that is the subject of the action, the court is not required to appoint a special representative for a deceased mortgagor for the purpose of defending the action, if there is a:
>
>> (1) living person, persons, or entity that holds a 100% interest in the property, by virtue of being the deceased mortgagor's surviving joint tenant or surviving tenant by the entirety[.]" *Id*. § 15-1501(h)(1).

Section 15-1501(h) also provides that a deficiency judgment against the deceased mortgagor is prohibited. *Id.* § 15-1501(h).

¶ 49    According to Darlene, section 15-1501(h)(1) allows a secured party to foreclose on the deceased's former ownership percentage and directs that the foreclosure action should be pursued against the surviving joint tenant who obtained a 100% ownership interest. We disagree, as this interpretation ignores the plain language and purpose of the statute.

¶ 50    Section 15-1501(h) merely addresses the circumstances under which a court need not appoint a special representative for a deceased mortgagor for the purpose of defending the action. It has no bearing on the substantive law of joint tenancy discussed *supra*. Indeed, the purpose of section 15-1501(h) is to "regulate[ ] the procedural question of when a special representative must be appointed"; the statute "does not create, define, or regulate any rights of the parties to the action." *Schoenberg*, 2018 IL App (1st) 160871, ¶ 21 (holding that the legislative amendment to section 15-1501(h)(5), which provides that appointment of a special representative for a deceased mortgagor is not required where the deceased mortgagor conveyed title of the property to a trust prior to his death, applied retroactively). In other words, the statute "regulates the foreclosure proceedings by providing that the circuit court need not appoint a special representative when the property rights that would be protected by such appointment already belong to a person or entity capable of being sued." *Id.* Accordingly, section 15-1501(h)(1) does not provide a mechanism to resurrect Victor's extinguished interest in the Barrington property, as Darlene suggests.

¶ 51    Darlene nonetheless maintains that the appellate court's decision in *Bell*, 2020 IL App (3d) 190128, supports a holding that she may proceed against Susan to foreclose the judgment lien against the Barrington property. *Bell* is inapposite. There, the husband and wife jointly executed a mortgage agreement for the purchase of a home as mortgagors and tenants by the entirety;

however, only the wife signed the note. *Id.* ¶¶ 4-5. The wife died three years later. *Id.* ¶ 11. Subsequently, the mortgagee's assignee filed a complaint against both the husband and the wife to foreclose upon the mortgage agreement. *Id.* ¶ 12. The assignee (at this point, a substituted party) moved to dismiss the wife as a defendant, based upon her death. *Id.* ¶ 17. The motion was granted, and the wife was dismissed from the case. *Id.* After protracted litigation involving a purported release from the mortgage and the validity of various assignments, the trial court entered a judgment of foreclosure and sale. *Id.* ¶¶ 19-27. The trial court later confirmed the sale and entered an eviction order and deficiency judgment. *Id.* ¶ 29.

¶ 52      On appeal, the husband argued, *inter alia*, that the wife was a necessary party such that the trial court lost subject matter jurisdiction after the wife was dismissed from the action. *Id.* ¶¶ 34, 36 (citing *ABN AMRO Mortgage Group, Inc. v. McGahan*, 237 Ill. 2d 526, 528, 535 (2010) (foreclosure proceedings are *quasi in rem* actions; thus, for the trial court to obtain subject matter jurisdiction, a mortgagee must name a personal representative for a deceased mortgagor in a mortgage foreclosure proceeding)). Consequently, the husband argued that the foreclosure judgment and subsequent orders were void. *Id.* ¶ 34.

¶ 53      The appellate court rejected the husband's argument, citing the application of section 15-1501. *Id.* ¶¶ 36-37. Namely, in accordance with section 15-1501(h), there was no need to appoint a special representative for the wife to defend the action, because the husband—the surviving tenant by the entirety holding a 100% interest in the property—was also named as a defendant. *Id.* ¶¶ 37-38.

¶ 54      As discussed, the case *sub judice* does not involve the question of whether the trial court was required to appoint a special representative for a deceased mortgagor to defend the action. *Bell* speaks to "the procedural question of when a special representative must be appointed" (see

*Schoenberg*, 2018 IL App (1st) 160871, ¶ 21), not the substantive law of joint tenancy. Moreover, as the trial court pointed out, the defendant husband in *Bell* was not just the owner of the property as a surviving joint tenant by the entirety; he had also jointly executed the mortgage agreement. *Bell*, 2020 IL App (3d) 190128, ¶¶ 4-5. Thus, a special representative for the deceased mortgagor was not necessary where "the property rights that would be protected by such appointment already belong to a person or entity capable of being sued." See *Schoenberg*, 2018 IL App (1st) 160871, ¶ 21.

¶ 55    In sum, Susan is not a judgment debtor; the Florida judgment was solely against Victor. Susan, as the last surviving joint tenant, automatically became the 100% owner of the Barrington property when Victor died. See *Harms*, 105 Ill. 2d at 224-25. Accordingly, Victor no longer had an interest in the Barrington property upon which Darlene's judgment lien may attach. The trial court, therefore, properly entered summary judgment in Susan's favor.

¶ 56                                    III. CONCLUSION

¶ 57    For the reasons stated, we affirm the judgment of the circuit court of Lake County.

¶ 58    Affirmed.

---

***Westberg v. Barcroft*, 2022 IL App (2d) 210543**

---

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of Lake County, No. 19-CH-535; the Hon. Stacey L. Seneczko, Judge, presiding. |

---

| | |
|---|---|
| **Attorneys for Appellant:** | Ariel Weissberg and Rakesh Khanna, of Wiessberg and Associates, Ltd., of Chicago, for appellant. |

---

| | |
|---|---|
| **Attorneys for Appellee:** | James A. Karamanis and Kenneth A. Nazarian, of Barney & Karamanis, LLP, of Chicago, for appellee. |

---